FOIX v. MOELLER et al.

(Court of Civil Appeals of Texas. El Paso. June 26, 1913. On Rehearing, Oct. 23, 1913.)

1. FRAUD (§ 30*)—PARTIES LIABLE.

Each party to a fraudulent transaction is liable for the false representations of the others, made in pursuance of the mutual understanding of the parties or in furtherance of the common plan, at least until the termination of the enterprise.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 35; Dec. Dig. § 30.*]

2. PRINCIPAL AND AGENT (§ 156*) — FALSE REPRESENTATIONS OF AGENT—LIABILITY OF PRINCIPAL.

A principal is liable for authorized false representations made by his agent, and for false representations made by the agent in the due course of his employment, made to induce one to purchase property, whether the principal or the agent knew the representations to be false or believed them to be true, where the representations were intended to and actually did induce the purchase.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 583–587; Dec. Dig. § 156.*]

3. PRINCIPAL AND AGENT (§ 184*)—FRAUDULENT REPRESENTATIONS — LIABILITY OF PRINCIPAL.

Where one was induced by false representations of a principal or his agent to purchase property, the liability of the principal for the damages sustained need not rest on the tort, but may be referred to the contract; such representations operating, as against the seller, as a warranty.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 701–703; Dec. Dig. § 184.*]

4. FRAUD (§ 13*) — FALSE REPRESENTATIONS OF AGENT—LIABILITY.

An agent is not liable for the making of false representations unless he knew them to be false, or unless he made them as a positive assertion, calculated to convey the impression that he had actual knowledge, when in fact he was conscious that he had no actual knowledge.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 3–5; Dec. Dig. § 13.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**5. FRAUD (§ 22*) — FALSE REPRESENTATIONS OF AGENT—LIABILITY.**

Where an agent, authorized to sell stock of a mining corporation, falsely stated to a prospective purchaser that he was acquainted with the mine and the incorporators, and that the corporation had good title, and thereby induced a purchase of stock and prevented the purchaser from making inquiry and thereby discover the truth, the agent could not defeat a recovery on the ground of the purchaser's negligence.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 19–23; Dec. Dig. § 22.*]

**6. FRAUD (§ 30*)—FALSE REPRESENTATIONS—PERSONS LIABLE.**

An agent making false representations inducing one to purchase corporate stock is not responsible for the fraudulent representations of another, acting as the agent of a third person in the sale of the stock.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 35; Dec. Dig. § 30.*]

**7. TRIAL (§ 143*) — EVIDENCE — SUBMISSION OF ISSUES TO JURY.**

Where the evidence is conflicting, the issue must be submitted to the jury, and a peremptory charge is erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

**8. PRINCIPAL AND AGENT (§ 156*) — FALSE REPRESENTATIONS OF AGENT—LIABILITY OF PRINCIPAL.**

That one, induced by the fraudulent representations of an agent to purchase corporate stock, took the personal guaranty of the agent, did not relieve the principal from liability, provided the representations were made in the course of the agency or ratified by the principal by accepting the benefits of the sale.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 583–587; Dec. Dig. § 156.*]

**9. FRAUD (§ 9*)—SALE OF STOCK—FRAUDULENT REPRESENTATIONS—PROSPECTUS.**

A prospectus of a corporation, which gives information as to the property, machinery, and appliances of the corporation and its financial condition, is a representation of fact, and, if false and the inducement for a purchase of stock, the corporation is liable for the damages sustained.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 8; Dec. Dig. § 9.*]

**10. PRINCIPAL AND AGENT (§ 137*) — FALSE REPRESENTATIONS OF AGENT—LIABILITY OF PRINCIPAL.**

A principal, who ratifies the action of his agent in making false representations inducing a purchase of property, by taking the proceeds of the sale, except the commissions payable to the agent, is estopped from asserting that he did not authorize the agent to make the representations.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 492–494; Dec. Dig. § 137.*]

**11. FRAUD (§ 55*) — SALE OF CORPORATE STOCK—EVIDENCE—ADMISSIBILITY.**

Where, in an action for fraud inducing a purchase of stock of a mining corporation, there was no question of the good faith of the officers of the corporation, and the matter of extension of time on deferred payments before title would pass to the purchaser was not pleaded as a defense, evidence that, after the termination of the rights of the corporation to the mine, an officer procured another option on the mine, under which he intended to protect stockholders, and that by reason of a revolution in the foreign country where the mine was located

he could not avail himself of the option, was inadmissible.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 52; Dec. Dig. § 55.*]

**12. FRAUD (§ 55*) — SALE OF CORPORATE STOCK—EVIDENCE—ADMISSIBILITY.**

In an action for fraud inducing a purchase of stock of a mining corporation, evidence as to how much money some of the defendants had put into the enterprise before or after the incorporation, for which they were never paid, was inadmissible because not excusing them from liability for the false representations.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 52; Dec. Dig. § 55.*]

**13. FRAUD (§ 50*) — EVIDENCE — BURDEN OF PROOF.**

One suing for fraud inducing the purchase by him of property has the burden of proving it.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. § 50.*]

**14. FRAUD (§ 52*) — EVIDENCE — ADMISSIBILITY.**

A large latitude is permitted in the admission of evidence of fraud, and evidence of facts not themselves directly in issue is admissible where they are relevant to the issues made by the pleadings.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. § 52.*]

### On Rehearing.

**15. PRINCIPAL AND AGENT (§ 156*)—FRAUDULENT REPRESENTATIONS — LIABILITY OF AGENT.**

Where an agent authorized to sell property made false representations and thereby induced a purchaser to believe the representations and prevented him from instituting any inquiry in relation to the facts, and the purchase was made in reliance on the information given by the agent, the agent was liable for the fraud, though he disclosed his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 583–587; Dec. Dig. § 156.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by L. A. Foix against William Moeller and others. From a judgment granting insufficient relief, plaintiff appeals. Reversed and remanded.

Goldstein & Miller, of El Paso, for appellant. Lea & Nagle, Jones & Jones, M. W. Stanton, and J. F. Weeks, all of El Paso, for appellees.

HARPER, C. J. This is a suit brought by appellant, L. A. Foix, to recover from William Moeller, A. J. King, W. L. Rynerson, K. F. Purdy, and the Purdy Gold & Silver Mining Company the sum of $2,000 as damages for certain alleged false and fraudulent representations practiced upon him by said parties, whereby he was induced to purchase 5,000 shares of the capital stock of the Purdy Gold & Silver Mining Company, paying therefor $2,000 on June 2, 1910, which stock he alleges, is absolutely worthless, but, relying upon the false and fraudulent representations of appellees, he was induced to buy said stock and pay said price therefor, wherefore he

was damaged in the sum of $2,000, with interest thereon from June 2, 1910, at the rate of 6 per cent. per annum, for which he prayed judgment against all of said defendants.

Plaintiff charges: That the appellee Moeller published in the El Paso Herald the following: "A Gilt Edged Investment. Of $4,-000.00 that will be worth $10,000.00 in a year from now, and pay 3½% interest per month." That he read said advertisement, and, induced thereby, called on Moeller and inquired what said investment was, and Moeller informed him that it was stock in the Purdy Gold & Silver Mining Company, which he offered to sell plaintiff, and, to induce him to buy it, stated to him: That said Purdy Gold & Silver Mining Company was a legitimate company, and the purchase of stock therein a safe and conservative investment; that he (Moeller) was acquainted with said mining company, its property, holdings, and with its incorporators, officers, and directors; that said mining company owned a mine in Sonora, Mexico, with which he was well acquainted; that it was a fine mine, a large producer of silver, and that said company owned said mine and all equipment, machinery, and necessary buildings to operate said mine, and was operating said mine, and taking ore therefrom yielding 1,000 ounces of silver to the ton, but the company desired to improve and enlarge its machinery, and install a larger mill and cyanide plant, and to that end had decided to sell a small quantity of its capital stock at 40 cents per share, par value thereof being $1.00 per share; that having known Moeller for years he relied upon his statements, and was greatly impressed with the advisability of buying the said stock, which facts he communicated to Moeller. Whereupon Moeller stated that he would send for the defendant King, who was in Douglas, Ariz., and who would bring the stock with him and explain further to the plaintiff about said company, its property, and its condition. That pursuant to Moeller's request King came to El Paso, and Moeller arranged with him to meet plaintiff in Moeller's office; Moeller being present and participating in the conversation, and reiterating and vouching for King's statements, at which time and place King stated to plaintiff, and read from the prospectus of said company, to the effect that: "The Purdy Gold & Silver Mining Company owned the Roy and San Rafaelito mines in Sonora, Mexico, and the equipment, machinery, buildings, and appliances used in connection with the operation of said mines; that said company was in fine financial condition, and said mine in fine shape, and that said company desired to sell a small part of its stock in order to enlarge its equipment and machinery." That Moeller and King, in making the aforesaid statements, were acting for themselves and codefendants and being authorized so to do, and in pursuance of the common design

and a conspiracy entered into between them for the purpose of giving said company the appearance of a bona fide company, and of sound financial strength for the purpose of selling stock therein. That King read from a prospectus of said company in the preparation of which the defendants King, Purdy, and Rynerson, as the incorporators, officers, and directors of said company assisted; and all of said defendants, with the knowledge of the said prospectus and the falsity thereof and the contents of which they knew, and should have known by the exercise of such care as it was their duty to exercise, accepted, ratified, and approved and knowingly permitted King and Moeller to circulate the same for the purpose of selling stock in said company, and were guilty of gross negligence in permitting King to circulate the same; and that said parties, as the incorporators of said company, and actively controlling its affairs and holding themselves out to the public as such, were charged with notice of the publication of the said prospectus, the falsity of the statements contained therein, and its use by said King in the sale of the stock of said company, and had they exercised such diligence as the law required of them, as such officers of said company, they would have known of the publication of the same, and wherein the same was false and misleading, and would have prevented the use of the same in the sale of the stock of said company, and were grossly negligent in failing so to do. That said prospectus repeatedly referred to the Roy and San Rafaelito mines as the property of said company, and likewise referred to the mining machinery, equipments, and buildings used in connection therewith, and thereby purposely conveyed the meaning that said company owned said mines, mining machinery, equipments and buildings, and purposely failed to state the nature of its claim thereto—all for the purpose of deceiving plaintiff and inducing him to believe that said company owned said mines, equipments, buildings, etc.; all of which statements were false, in that said company never, at any time, owned said mines, but merely had an option to purchase the same and on which it had only paid $5,000, and that it owed on said contract, or option, the sum of $27,000, $9,000 of which became due on or before August 11, 1910, $9,000 on or before February 11, 1911, and $9,000 on or before August 11, 1911, and time was made the essence of said option, and the failure to make said payments, as they respectively became due, gave the owner of said mines the right to terminate said contract and forfeit the interest of said company in said property; and that said company did fail to make the $9,000 payment due August 11, 1910, on account of which the owners of said mines forfeited said contract and took possession of said property, but plaintiff, relying upon the statements of said Moeller

and King, and those contained in the prospectus, and believing the same to be true, and induced thereby, purchased the stock in question and was damaged in the sum of the amount paid therefor with interest. By trial amendment plaintiff pleaded that, in pursuance of the conspiracy between the incorporators of said company, the stock of said company, not allotted to said parties, was put in escrow in the First National Bank of Douglas to facilitate the. sale of same by the said King, and under direction to said bank to deliver stock on the payment of 30 cents per share, and that stock sold to plaintiff was a part of the stock thus put in escrow by said defendants, and that King and Moeller, in making statements and representations, and that said defendants in publishing said prospectus did so in pursuance of the common design and conspiracy entered into between them for the purpose of selling said stock.

The defendant the Purdy Gold & Silver Mining Company answered by general and special exceptions, general denial, and for special plea alleged that it did not execute the prospectus set up as an exhibit in plaintiff's petition, and that it did not authorize any one to do so. And further alleged that the charter issued under the laws of Arizona did not authorize it to buy mines in the republic of Mexico, and therefore such acts were ultra vires and void, etc. No brief is filed in this court by said defendant corporation.

Defendant K. F. Purdy answered by general denial, and specially denied that he employed or authorized his codefendants, William Moeller and A. J. King, to act as his agents; and further denies that a sale of stock was made by the Purdy Gold & Silver Mining Company or by any agent of the said company, as alleged by the plaintiff. Further alleged that he (Purdy) had no knowledge of the sale of stock and received no benefit or thing of value growing out of same. That the plaintiff in fact made no absolute purchase of stock, but by an agreement between him and A. J. King, he (plaintiff) took a guaranty or indemnity against loss, with a covenant that King would at the expiration of one year return the money if plaintiff was not satisfied. That therefore defendant Purdy is not liable, and for further answer adopted the special allegations in the answer of the Purdy Gold & Silver Mining Company.

William Moeller answered by general denial and specially alleged that at the time the stock was sold to plaintiff, or at any other time, he had no interest in the Purdy Gold & Silver Mining Company, and that he was in no wise connected with the transaction as a principal, but acted solely as an agent for one A. J. King, who listed said stock with him, as a real estate agent and broker, for sale; and that he so informed the plaintiff at the time of the negotiations for sale, and further informed the plaintiff that he (King) could tell him all about the stock; that he introduced the said King to plaintiff; and that all the negotiations for the sale of said stock were conducted by said King with the plaintiff. And further alleged that the said plaintiff made no absolute purchase of stock, but a conditional one; that by agreement between him and A. J. King, he (plaintiff) took a guaranty or indemnity against loss, with a covenant that King would at the expiration of one year return the money if plaintiff was not satisfied; that therefore defendant Moeller is not liable.

W. L. Rynerson pleaded general denial, adopted the answer of defendant Purdy, that the prospectus .pleaded by plaintiff was not issued, signed, circulated, or promulgated by him or with his knowledge or consent, or by any one authorized by him.

Upon the conclusion of the evidence, the court peremptorily instructed the jury to return a verdict against plaintiff, and in favor of the defendants Moeller, Purdy, and Rynerson, and in plaintiff's favor against the defendant A. J. King for $2,000, with interest thereon from June 2, 1910, at 6 per cent. per annum, and in plaintiff's favor against the defendant Purdy Gold & Silver Mining Company in the sum of $1,000, with interest thereon from June 2, 1910, at the rate of 6 per cent. per annum.

Having decided that this case must be reversed and remanded for new trial, we refrain from quoting from the evidence, except in so far as we deem it necessary in passing upon the points of law requisite for instruction to the trial court; and in passing on the assignments of error we pass upon the propositions which are likely to arise upon another hearing in trial court.

The first assignment charges that the trial court erred in refusing to give a special charge requested, which was a peremptory charge for the jury to find for plaintiff against William Moeller; the proposition being that the uncontradicted facts and admissions of Moeller show that he and defendant King were acting together in the sale of the stock, and that Moeller referring plaintiff to King as a person who knew all about the Purdy Gold & Silver Mining Company, its mines and property, and that he could and would tell plaintiff the facts about the property, and the evidence showing that the statements concerning the mine and the condition of the company made by each of them, he (Moeller) became bound thereby.

The first question is: Would Moeller be responsible if he should make false statements and representations about the stock to be sold as an inducement to the purchase thereof? And, second, if so, then would he be responsible for the false and fraudulent representations concerning the stock made by King, if he (Moeller) represented to the purchaser that he (King) knew all about the

said company and its mines and referred plaintiff to him (King) for information?

[1] The general rule is that, both in civil and criminal cases, each party to a fraudulent transaction is responsible for the acts and representations of the others done in pursuance of the mutual understanding or in furtherance of the common plan, at least until the termination of the enterprise. Wolf v. Perryman, 82 Tex. 119, 17 S. W. 772.

[2] For material and false representations made by his agent, as fully as for such representations made by himself in person, the principal is responsible, if he authorized the agent to make them, or if they were made by the agent in the course of his employment as such. When so made by the agent, such representations are to be treated as, the representations of the principal, and whether the principal, if he made such representations, or his agent, if he made them, knew them to be false, or made them innocently, believing them to be true, is of no importance in determining the liability of the former for damages actually suffered, where the representations were intended to induce, and did induce, a buyer to purchase the property he otherwise would not have purchased of the principal.

[3] In such a case, if the representations were fraudulently made, the liability of the principal need not be rested upon the tort, but may be referred to the contract, for, whether made innocently or deceitfully, such representations as against the seller operate as a warranty. Wimple v. Patterson, 117 S. W. 1034.

[4] The same rule does not apply to the agent, when he avowedly acts, not for himself, but for one known by the purchaser to be his principal; his liability, under such circumstances, to the buyer, depends upon his own fraud or deceit practiced on the purchaser to induce him to enter into the contract. As stated by a writer in 20 Cyc. 24: "It is well settled that, to support an action of deceit based on a false representation made by agent, it must be made to appear that he made them knowing them to be false, or must be made as a positive assertion calculated to convey the impression that he has actual knowledge of its truth when in fact he is conscious that he has no actual knowledge."

In the instant case, if Moeller represented to Foix that Purdy Gold & Silver Mining Company had good title to the mine, or made any other representations which were not mere expressions of opinion, and the purchase was made upon the faith of such representations, the mere fact that Moeller, or King, informed the purchaser that the bank at Douglas held the stock, and that the latter, after receiving this information, had sufficient time and opportunity to have inquired of the bank about the title, or other representations of fact, before he made the purchase, will not absolve the former from liability for the misrepresentation; for if the representations were such as to induce the purchaser to believe them, and to prevent him from instituting any further inquiry in relation thereto, and he made the purchase relying upon the information on the subject that he received from Moeller, then the latter would be responsible for the fraud, and, too, even though he had disclosed the name of his principal.

[5] If Moeller stated to Foix that he was acquainted with the mine, knew the parties who had incorporated the Purdy Gold & Silver Mining Company, and that their title was good, such things were calculated to increase the confidence of Foix in the statements of facts, if any, made by the said Moeller. The argument of appellee Moeller "that he gave sufficient information to put Foix upon inquiry concerning title, etc., to constitute constructive notice that the company did not own the mine, and that consequently he must be regarded as being aware of the falsity of the representations at the time he made the purchase," is inapplicable to the facts of this case as we view them. The information, if given in the manner depicted by Foix, was calculated to mislead and deceive, and although Foix might have, by a letter of inquiry, discovered the true facts, yet, if he was prevented from doing so by the character of the representations themselves, it cannot be said with any degree of propriety that the deception under which he labored was the result of his own negligence. Campbell v. Hillman, 15 B. Mon. (Ky.) 508, 61 Am. Dec. 197.

[6] As was stated in Wimple v. Patterson, 117 S. W. 1035, to constitute fraud which would make the agent personally liable, it is not only necessary that the representations should be untrue, but the agent should know it to be so at the time it was made, or that they were made as a positive assertion calculated to convey the impression that he had actual knowledge of the truth when, in fact, he was conscious that he had no such knowledge. If then Moeller as agent, when he sold the stock to Foix, actually believed the statements be made, which induced the purchase, to be true, although untrue, yet, having been made in good faith, would not amount to a fraud, or subject him to any responsibility to the purchaser; and in no event would he be responsible for the fraudulent representations of defendant King, who, under the facts of this case, was the agent of the other defendants.

[7] But these are all matters of fact for the jury to determine, and the evidence, being conflicting, should have been submitted under appropriate instructions by the trial court, but not in a peremptory charge, as requested by appellant, the refusal of which is made the subject of his first assignment, and it is therefore overruled.

What is said above disposes of the second,

third, fourth, seventh, eighth, ninth, tenth, eleventh, twelfth, and the sixth and nineteenth assignments as they apply to defendant Moeller.

The fifth, sixth, thirteenth, and fifteenth assignments charge that the court erred in peremptorily instructing a verdict for defendants Moeller, Purdy, and Rynerson, as follows: "You are further instructed to find a verdict in favor of the plaintiff and against the defendants A. J. King and the Purdy Gold & Silver Mining Company. You will find against said defendant King in the sum of $2,000, with interest thereon from the 2d day of June, 1910, at the rate of 6 per cent. per annum to this date. You will find against the defendant company in the sum of $2,000 and interest thereon from the 2d day of June, 1910, at the rate of 6 per cent. per annum."

It appears from the record that defendant Moeller was the agent of King, and under the following testimony of Purdy and Rynerson, to the effect that they incorporated and were the officers of the company, that they issued the treasury stock and placed it in the bank, and by the following writing authorized A. J. King to act as their agent: "Douglas, Arizona, March 17, 1910. First National Bank, Douglas, Arizona—Gentlemen: I herewith deposit with you the following certificates of stock in the Purdy Gold & Silver Mining Company (here follows an itemized list of the stock so deposited which includes shares bought by plaintiff), and I hereby authorize you to deliver to A. J. King any or all of the certificates, on payment of not less than 20c per share, and to deposit the proceeds to the credit of the Purdy Gold & Silver Mining Company. You are instructed to deliver any or all of the stock in your possession to Dr. K. F. Purdy, or to me on demand and without payment. These instructions are subject to change at any time on my written order. W. L. Rynerson." The testimony further tends to show that Foix was influenced in deciding to make the purchase by the representations made by both Moeller and King.

[8] Applying the well-settled principle of law above quoted, "that material and false representations made by the agent, or by himself in person, the principal is responsible if he authorized the agent to make them, or if they were made by the agent in the course of his employment as such. When so made by the agent, such representations are to be treated as those of the principal, and whether the principal, if he made such representations, or his agent if he made them, knew them to be false, or made them innocently, believing them to be true, is of no importance in determining the liability of the former for damages actually suffered, where the representations were intended to induce, and did induce, a buyer to purchase property he otherwise would not have purchased. Mitchell v. Zimmerman, 4 Tex. 81, 51 Am. Dec. 717.

And it would make no difference that he (Foix) took the personal guarantee of defendant King, agent of the company. If Foix was influenced to purchase the stock by the representations of King, and the representations were made in the course of his agency, or if Purdy and Rynerson accepted the benefits thereof (Rynerson testified that he knew of the sale and checked out the money), they would be held to have ratified the sale. Though the representations made by King to induce the sale were not made in the scope of his authority, still they (Purdy and Rynerson) would be liable to Foix for the moneys actually paid by him for the stock which was worthless.

[9, 10] Appellees invoke the rule laid down in Belo v. Fuller, 84 Tex. 450, 19 S. W. 616, 31 Am. St. Rep. 75, as applicable to the facts of this case. In the case cited the cause of inquiry was the publication of an article in a newspaper which reflected upon plaintiff, etc. In this case the prospectus was in the nature of personal representations of fact, which led to the sale of worthless stock in a mining company. In the one case the libelous matter in the publication was the matter complained of. In this case, the prospectus being false and having induced plaintiff to purchase, it became a matter of misrepresentation of a fact, upon which plaintiff acted to his injury. In so far as the pleading and evidence in this case reveals the facts, they tend to prove that Purdy and Rynerson were the real beneficiaries in the sale of the stock, except the commissions to be paid to King and Moeller, and if they (Purdy and Rynerson) ratified the actions of their agent by taking the proceeds of the sale and appropriating same to their own use, they cannot now be heard to say that they did not authorize King to make the misrepresentations which brought the proceeds of the sale; and it would not matter whether they knew of the false representations of King, if any, or not; they would be equally liable after ratification. Meinershagen v. Taylor, 169 Mo. App. 12, 154 S. W. 886.

The seventeenth assignment reads: "The court erred in peremptorily instructing the jury to find a verdict in favor of the defendants Moeller, Purdy, and Rynerson, because the evidence supported the issue of conspiracy, pleaded by plaintiff as against said defendants and their codefendants, to sell the stock of said company, and plaintiff was entitled to have this issue submitted to the jury for their determination."

There is no evidence that Moeller acted with Purdy and Rynerson in such manner as to constitute a conspiracy, so the court did not err in refusing to submit the proposition complained of. If, however, upon another trial there should be any evidence that the parties defendant acted together in a common design to induce Foix to purchase the worthless stock, in that case the question of conspiracy should be submitted to the jury.

[11] The eighteenth assignment charges that: "The court erred in permitting the defendant Purdy to testify that after the Purdy Gold & Silver Mining Company's rights to said mine, under said contract, had been terminated and forfeited, the said Purdy procured another option on said mine, under which he intended to protect the shareholders of the old Purdy Gold & Silver Mining Company, and that, by reason of the revolution in Mexico, he was unable to avail himself of said option, all as shown by plaintiff's bill of exception No. 1, because said matters transpired long after the alleged fraud had been perpetrated upon plaintiff, and plaintiff would not be required to waive the fraud that had been perpetrated upon him and take stock in another company as a satisfaction for said fraud, and such facts, if true, constitute no defense to this action and was calculated to prejudice the rights of the plaintiff before the jury."

Being no question of good faith upon the part of the officers of the corporation, and the matter of extension of time on the deferred payments to be made before title could be had not being pleaded as a defense to plaintiff's cause of action, the court erred in admitting the testimony complained of.

[12] The nineteenth assignment complains that "the court erred in permitting the defendants Purdy and Rynerson to testify as to moneys advanced by them out of their own pocket for the benefit of the company, as the same did not tend to prove any fact constituting any defense to plaintiff's cause of action, and was calculated to prejudice his rights before the jury, all as shown by plaintiff's bills of exception Nos. 2 and 3."

The question of how much money Rynerson and Purdy put into the enterprise, before or after the incorporation, for which they were never paid, does not tend in any way to excuse them from liability to plaintiff, if the jury upon another trial find that under the facts then proven, applied to the rules of law above enunciated, they are liable to plaintiff for damages, if any suffered by him.

[13, 14] The issue in this case being fraud, the burden of proving it is upon the plaintiff. From its very nature, it is usually impossible to prove it by direct and positive testimony, and for this reason a large latitude is permitted in admission of evidence on such an issue. Evidence of facts, not themselves directly in issue, is admissible where such facts are relevant to the issues made by the pleadings. Such facts may be in time remote from the principal fact; but, when taken together and connected with other facts, they may form links in an unbroken chain of circumstances extending back to the time of the occurrence of the main fact and establish its existence by showing that each link in the chain of facts extending from it was but the sequence of which it was the present or proximate cause, and these observations apply to all the parties, both plaintiff and defendants.

Appellees Purdy and Rynerson plead and testify that they had no interest in the stock in question, and they contend that in order to hold them personally liable it was incumbent upon the plaintiff to prove such facts as would be necessary to hold a director of a corporation personally liable. This is approximately a correct statement of the law, but we do not feel that he would be justifiable in holding that there is no such evidence in this record, and certainly there is no such showing in evidence as would justify a holding at this time that there would not likely be such evidence upon another trial of this case; and unless we could so hold this case would not be affirmed as to these defendants. These defendants are in the position of promoters, and a stricter rule applies to them than to Moeller, which rule is enunciated in Dickerman v. Northern Trust Co., 176 U. S. 204, 20 Sup. Ct. 311, 44 L. Ed. 423.

For the reasons given above, this cause must be reversed and remanded for a new trial, and it is so ordered.

### On Rehearing.

[15] Having concluded that the opinion of the court is subject to one of the criticisms made in the motion for rehearing, we make the following correction:

Beginning at "In the instant case," if Moeller made misrepresentations of facts which would render him liable under the rule of law quoted in the original opinion (20 Cyc. 24), and the purchase was made upon the faith of such representations, the mere fact that Moeller, or King, informed the purchaser that the bank at Douglas held the stock, and that the latter, after receiving this information, had sufficient time and opportunity to have inquired of the bank about the title, or other representations of fact, before he made the purchase, will not absolve the former from liability for the misrepresentation, for if the representations were such as to induce the purchaser to believe them, and to prevent him from instituting any further inquiry in relation thereto, and he made the purchase relying upon the information on the subject that he received from Moeller, then the latter would be responsible for the fraud, and, too, even though he had disclosed the name of his principal.