**A. W. CRISP, Jr., and Crisp Equipment Company, Appellants,**

v.

**SOUTHWEST BANCSHARES LEASING COMPANY, Appellee.**

No. 9027.

Court of Civil Appeals of Texas, Amarillo.

Aug. 10, 1979.

Rehearing Denied Sept. 26, 1979.

Wilbur T. Knape, Hurst, for appellants.

Daniel K. Hedges, Russell H. McMains, Rufus Wallingford, Fulbright & Jaworski, Houston, for appellee.

REYNOLDS, Chief Justice.

Adjudged aiders and abettors in a fraudulent scheme, defendants seek relief from a monetary judgment on the central conception that the defrauded plaintiff is bound by the knowledge and acts of its agent, who participated in the scheme. Neither that conception nor any other ground asserted for reversal is sustainable under the circumstances of this cause. Affirmed.

Southwest Bancshares Leasing Company began this litigation against Bentwood Corporation, James W. McPherson, A. W. Crisp, Jr., Crisp Equipment Company and other defendants. Southwest's stated cause of action was for the recovery of monetary damages resulting from a fraud perpetrated against it by Bentwood and its president, McPherson, who were knowingly aided and abetted by Crisp Equipment, Crisp (the president of Crisp Equipment), and other defendants.

Southwest pleaded that it was in the business of leasing equipment for use in commercial enterprises, usually purchasing the equipment at the behest of the prospective lessee and then leasing it to the lessee. Bentwood, acting through its president, McPherson, made application to Southwest for a lease of items of construction equipment. Southwest alleged that it issued and delivered to McPherson two checks payable to Crisp Equipment in the sums of $35,000 and $27,500 for the purchase of a front-end loader and a grader, respectively, after the company had issued sworn bills of sale, which were formally notarized by Crisp, indicating that for and in receipt of $35,000 and $27,500 Crisp Equipment had sold the equipment to Southwest. However, a clandestine deal between McPherson and Crisp

Equipment had been arranged, and the true purchase price of the equipment totaled only $14,750. Crisp Equipment apparently endorsed the two checks aggregating $62,-500 and returned them to McPherson, and Crisp Equipment was paid $14,750 by a Bentwood check.

Theorizing that it was entitled to rescind the sale for fraud, Southwest tendered the equipment to Crisp Equipment in return for the $62,500 it had paid. Alternatively and because of the fraud, Southwest sought both actual damages of at least $47,750, the difference between the market value of the equipment and the price Southwest paid, and exemplary damages.

. Defensively, the live trial pleadings of Crisp Equipment and Crisp averred that the fraud, if any, perpetrated against Southwest was by its president, E. L. Epperson, whose prior fraudulent transactions with McPherson put Southwest on notice; Epperson's acts were ratified by and bound Southwest, which accepted the benefits of the acts and is thereby estopped to recover damages; and that the bills of sale were fraudulently procured by Southwest and are invalid. Furthermore, Crisp Equipment and Crisp pleaded that the transactions were at arm's length and Southwest's failure to exercise ordinary care to protect its own interests was the sole cause of any damages. Still further, Crisp Equipment and Crisp pleaded that Southwest had elected to recover under a bond protecting it from losses incurred from the fraud and dishonesty of Epperson and is barred from prosecuting this suit.

Bentwood and McPherson failed to appear for the jury trial. The trial evidence adduced which bears on the appellate matters may be summarized.

Southwest was victimized in a series of fraudulent schemes involving purchase and lease transactions. To generate cash for Bentwood, McPherson, who actually owned all of the stock of and operated Bentwood, participated in the purchases of construction equipment at prices less than the purchase prices which are shown on the instruments conveying title to Southwest. South-

west, acting by president Epperson and another, leased the equipment to Bentwood, acting by McPherson. Checks issued on Southwest in the amounts of the cost of the equipment shown on the instruments of title were delivered to McPherson, who paid the sellers of the equipment the actual cost of the equipment and retained the balance. Southwest's president, Epperson, who according to McPherson received some of the proceeds from the checks, admittedly was complicitous in the schemes.

One transaction concerned the sale of two pieces of construction equipment by Crisp Equipment to Southwest and then leased by Southwest to Bentwood. McPherson negotiated with Crisp for the sale of the equipment to Southwest for a total amount of $14,500, but made it clear to Crisp that the equipment would not be bought unless Crisp filled out the bills of sale in favor of Southwest for certain amounts of money. Crisp directed an employee, Charles White, to execute, at the request of McPherson, two bills of sale, one showing a grader sold to Southwest for $27,500, and the other showing a loader sold to Southwest for $35,000. Crisp, a notary public, admitted to formally notarizing the bills of sale. Epperson then issued Southwest's checks, one for $27,500 and the other for $35,000, payable to Crisp Equipment and hand delivered them to McPherson. The checks were endorsed "Crisp Equipment Co." Crisp and employee White testified that neither endorsed the checks. McPherson testified that he, in the presence of Max Shaw, a banker, personally observed White endorse the two checks; and Shaw, who accompanied McPherson to Crisp Equipment for the purpose of having the checks endorsed, testified that a person in Crisp Equipment's office endorsed the two checks. The two endorsed checks were returned to McPherson. Crisp was paid $14,500 for the two pieces of equipment by a Bentwood check.

Following the introduction of evidence, some named defendants were dismissed upon the motion of Southwest, leaving Crisp Equipment, Crisp and one other defendant. The jury exonerated the third defendant, but the jury found, in response to special issues submitted, that:

No. 5: McPherson and others participated in a scheme to defraud Southwest with respect to the purchase of construction equipment from Crisp and Crisp Equipment.

No. 6: Crisp and Crisp Equipment knowingly aided and abetted in such scheme.

No. 6A: Such aiding and abetting was a proximate cause of any damage to Southwest.

Accepting the verdict and rendering judgment, the trial court decreed, *inter alia*, that Southwest recover of and from Bentwood, McPherson, Crisp Equipment and Crisp, jointly and severally, the sum of $47,750, with pre-judgment and post-judgment interest. Crisp and Crisp Equipment have appealed, seeking a reversal of that portion of the judgment rendered against them and a rendition of judgment in their favor or, alternatively, a remand of the cause.

■ Crisp and Crisp Equipment, collectively styled Crisp unless otherwise named, have designated nine points of error. At the outset, Southwest challenges all nine points, contending that each one is flagrantly multifarious in violation of Tex.R.Civ.P. 418,[1] and unworthy of consideration on the authority of *Flock v. Kelso*, 366 S.W.2d 698 (Tex.Civ.App.—Amarillo 1963, no writ), and *International Security Life Ins. Co. v. Short*, 443 S.W.2d 949 (Tex.Civ.App.—Amarillo 1969, writ dism'd). Rule 418 governs the contents of an appellant's brief and, as amended effective 1 January 1978, provides that the brief should contain, among other matters:

(d) Points of Error. A statement of the points upon which the appeal is predicated shall be stated in short form without argument and be separately numbered. In parentheses after each point, reference shall be made to the page of the record where the matter complained of is to be found. Such points will be

---

1. All references to rules are to the Texas Rules of Civil Procedure.

sufficient if they direct the attention of the court to the error relied upon.

With notice of Southwest's challenge to the sufficiency of the points, Crisp requested and was granted, during submission of this cause, leave to file a supplemental brief; however, the original statements of points are sedulously echoed in the supplemental brief. Six and one-half pages are required to merely state the nine points. Each point either embraces more than one specific ground of error or attacks several distinct alleged errors. Obviously, the points are penned in patent violation of both the letter and the spirit of the rule; yet, by force of the rule, we are committed to pass on the merits of each point if we can ascertain, in the light of the statement and argument thereunder the complaint to which attention is directed. *Accord, O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976).

▮ After a comprehensive study of Crisp's briefs, we discern that Crisp has directed attention to the complaints which are recorded and discussed under the ensuing numerical headings. Any lack of certainty of discernment stems from the composition of Crisp's briefs. The briefs do not, contrary to the direction of Rule 418(e) that they should, "include (i) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found . . . ." Because Crisp's statement of facts is not referenced to pages in the record, this court has no duty to independently search the 522 pages of the statement of facts in an attempt to determine if the complaints have merit, *Saldana v. Garcia*,

155 Tex. 242, 285 S.W.2d 197, 200–01 (1955), but we have made the effort to do so.

### 1.

▮ Intertwined among Crisp's presentation of several points of error are complaints that there is no evidence to support either the submission of or the jury's answers to special issues nos. 5, 6 and 6A. The no evidence complaints invoke the principles that an issue must be submitted to the jury when it is raised by any evidence of a probative nature, *Air Conditioning v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422, 425 (1952), and the answers of the jury must stand if, viewing the evidence favorable to the findings and discarding all evidence and inferences contrary thereto, there is some evidence of probative force to support the findings. *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359, 363 (1957). In this light, the evidence, a summary of which has been stated, constitutes some evidence of probative force to compel the submission of the issues and to support the jury's answers to those issues. Consequently, the no evidence complaints are unavailing.[2]

### 2.

Crisp's no evidence complaints are but the antecedent for the central conception that Epperson's corruption is imputed to Southwest, thereby estopping Southwest from repudiating it and profiting by its own acts, and entitling Crisp to judgment as a matter of law. In view of the fact that the jury's answers establish Crisp's culpability in a fraudulent scheme which damaged Southwest, we must uphold the verdict un-

---

**2.** Parenthetically, it is noted that we have not overlooked Crisp's statement in one point that the jury's answers are contrary to and against the overwhelming weight and preponderance of the evidence. The statement is undeveloped, either by argument or citation of authority. Were the complaint properly presented, it would have validity only if, when all of the evidence is considered and weighed, the evidence supporting the findings is so weak or the evidence to the contrary is so overwhelming that the findings should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We

further note that in considering the appeal we have reviewed and weighed all of the evidence. Giving due deference to the jury's prerogative to judge the credibility of the witnesses and the weight to be given their testimony in resolving the conflicts and inconsistencies in the testimony and arriving at the findings the jury concludes are the most reasonable under the evidence, we cannot say that the jury's answers to the issues are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

less Southwest is, as a matter of law, chargeable with Epperson's fraudulent acts.

We are cognizant of the general rule, which Crisp so vigorously urges should be applicable here, that where the agent acts both for himself and his principal, the agent's knowledge is imputed to the principal, who cannot achieve an advantage secured by the fraud of the agent. *See, e. g., Vogel v. Zipp*, 90 S.W.2d 668, 672 (Tex.Civ. App.—Austin 1936, writ dism'd). The rule is for the protection of innocent third parties and does not protect those who collude with the agent to defraud the principal. So, that rule loses its applicability when the agent is acting fraudulently toward his principal. In that situation, the agent's knowledge is not binding on the principal and one who avails himself of the fraudulent services of the agent cannot claim that the agent's acts or knowledge bind the defrauded principal. *Centennial Mut. Life Ass'n v. Parham*, 80 Tex. 518, 16 S.W. 316, 319 (1891). The principle enunciated in *Parham* is also recognized by the federal court as one consistently followed by the Texas courts. *Southern Farm Bureau Casualty Insurance Co. v. Allen*, 388 F.2d 126, 131 (5th Cir. 1967). It follows that Southwest is not, as a matter of law, chargeable with Epperson's fraudulent acts.

### 3.

Crisp also claims entitlement to judgment on the strength of statements that the bills of sale did not constitute a representation of material fact or induce the execution of the lease agreement, and there is no evidence that Crisp either had any knowledge of the disposition of the two Southwest checks involved in the scheme or benefited from the fraud perpetrated. Crisp has neither favored us with an argument demonstrating how these statements, if true, would displace the jury verdict of Crisp's culpability in the scheme to defraud nor cited authorities supporting the efficacy of the statements.

Be that as it may, the evidence is that Mr. Crisp had the bills of sale prepared and he notarized them. The instruments show

sale prices he knew were far in excess of the price for which he agreed to sell the equipment and the price Crisp received. The bills of sale were the only foundation for the issuance of Southwest's checks, the sole evidence of Southwest's purchase and right to lease the equipment and, therefore, instruments essential to perpetrate the fraudulent scheme. The jury found that Crisp knowingly aided and abetted in a fraudulent scheme which damaged Southwest, and the findings have withstood the attacks Crisp has made upon them.

Each party to a fraudulent transaction is responsible for the acts of the others done in furtherance of the fraudulent scheme. *Foix v. Moeller*, 159 S.W. 1048, 1052 (Tex.Civ.App.—El Paso 1913, writ ref'd). And all who participate are liable for the fraud, *Jernigan v. Wainer*, 12 Tex. 189, 194 (1854), irrespective of proof that they shared in the profits, for the gravamen of the action is injury to plaintiff and not benefit to defendant. *King v. Shawver*, 30 S.W.2d 930, 932 (Tex.Civ.App. —Fort Worth, 1930, no writ). *See Wheeler v. American National Bank of Beaumont*, 162 Tex. 502, 347 S.W.2d 918, 926 (1961). Accordingly, the statements upon which Crisp relies do not conclusively establish that Crisp is entitled to judgment.

### 4.

An attempt is made to charge the trial court with error in overruling Crisp's objections to the court's jury charge. Crisp utilizes one point to merely refer to, without specifying, all objections shown in the transcript to have been made to the charge. The point does not constitute a sufficient compliance with Rule 418 to require, or even to justify, a consideration of the point. *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887, 890–91 (1960). The rule imposes upon counsel the duty of directing attention to, and not upon the court to discover if it can, the *particular* error relied upon. *Missouri-Kansas-Texas Railroad Co. v. McFerrin*, 156 Tex. 69, 291 S.W.2d 931, 941 (1956).

Notwithstanding, we observe in passing that the point, and the statement made thereunder, inject objections additional to those written objections made to the trial court. Because these objections were not voiced to the trial court, they are waived and are not before us for review. Rules 272 and 274; *Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). Moreover, the only argument which applies to the subject matter of objections is confined to this authoritative statement: a special issue propounding two questions, one of which could be answered no and the other answered yes, is multifarious and duplicitous and is therefore an improper issue to be submitted to the jury. Special issue no. 5 is the only issue objected to in the trial court as being duplicitous. The vice condemned by the authoritative statement is not present in that issue.

### 5.

Crisp tendered for submission, and the trial court refused to submit, an instruction and a group of seven special issues. On appeal, Crisp contends the court, by refusing the en masse submission, reversibly erred in depriving Crisp of its factual theory of defense.

The seven requested special issues tendered for an en masse submission represent five separate and distinct subjects. Four of the subjects are within the ambit of special issues nos. 5 and 6 which were submitted. Three of the issues are evidentiary only. Two of the issues involve pure questions of law predicated on undisputed facts. To this extent, the issues were not proper ones for submission on controlling issues. Where requested issues are tendered for an en masse submission and one or more of the issues should not be given, the court is justified in refusing to give any of them, for the court is not required to search through the group in an attempt to discover any issues which are proper. *Edwards v. Gifford*, 137 Tex. 559, 155 S.W.2d 786, 788 (1941). Hence, we are not able to say the trial court reversibly erred in refusing the en masse submission.

### 6.

Crisp avers that the court also reversibly erred in excluding the evidence Crisp offered to show that Southwest filed a lawsuit against and effected settlement with insurers under a banker's blanket bond covering Epperson's fraud and dishonesty. The evidence was offered in the trial court to show there had been an election of remedies by Southwest and the corrupt practices of Epperson are imputed to Southwest.

Crisp's appellate argument is that the testimony was admissible to show that Southwest's recovery under the bond includes losses for which recovery is sought against Crisp, and that satisfaction of judgment against one or more joint tort-feasors releases all other tort-feasors, including Crisp. The fallacy of the argument is that the evidence tendered negates, rather than shows, that recovery under the bond includes the recovery sought against Crisp, and Crisp does not even suggest how the insurers could be joint tort-feasors with Crisp. We perceive no error on the court's part.

### 7.

Mentioned by Crisp are other facets and variations of the main complaints we have addressed. All aspects raised have been considered and, in view of what we have written and in the interest of brevity, it suffices to state that no reversible error is presented. All points of error are overruled.

The judgment of the trial court is affirmed.

COUNTISS, J., not participating.