CHUCK WAGON FEEDING CO., INC., A Texas Corporation, Pete Pascoe, Tom Craven, and Phillip Stadtler, Appellants,

v.

Ellis Eugene "Red" DAVIS, Appellee.

No. 08–88–00020–CV.

Court of Appeals of Texas, El Paso.

March 1, 1989.

Rehearing Denied March 29, 1989.

John B. Luscombe, Jr., Ballard Shapleigh, Ralph E. Harris, Sam Sparks, Steven L. Hughes, Grambling & Mounce, El Paso, for appellants.

C. R. Kit Bramblett, Bramblett & Bramblett, P.C., El Paso, for appellee.

Before OSBORN, C.J., and
WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a judgment awarding Appellee, Ellis Eugene "Red" Davis, damages of $250,000.00 and prejudgment interest of $110,000.00 against Appellant, Chuck Wagon Feeding Co., Inc., on a breach of contract action, and against Appellants, Pete Pascoe, Tom Craven and Phillip Stadtler, on theories of corporate alter ego and guaranty, the liability of all Appellants being joint and several. Trial was to a jury. We reverse and render.

Appellants bring a number of points of error. Some of these challenge the admission of a "collateral note" and the subsequent submission of two issues to the jury, the adverse answers to which formed the basis for the judgment, as being outside

the trial pleadings. Appellants also contest the court's refusal to permit them to withdraw their announcements of ready and continue the case because of surprise when the collateral note was admitted, or in the alternative, to accept trial amendments pleading offset. Other points challenge the alter ego issue with respect to an instruction given in connection therewith, the rendering of a judgment on an illegal contract and a contract barred by limitations, and the legal and factual sufficiency of the evidence to support the jury's answers to key issues. Appellants also complain of an irreconcilable conflict in the answers to certain issues. Appellee raises two points of error, one on the legal and factual sufficiency of the evidence to support the answers to three defensive issues and the second on the court's instruction on the meaning of "consideration."

Chuck Wagon was incorporated in 1978 for the purpose of owning and operating feed lots and feeding cattle brought in from Mexico and elsewhere. Bill Bonfantini, Pascoe, Craven and Stadtler were the stockholders. Bonfantini was the president of the corporation from its organization until November 1980. He also ran the daily business of Chuck Wagon. The other three stockholders were not active in the daily operations of the corporation but did individually buy and sell cattle and utilize the services of Chuck Wagon for which they paid the same rates charged to other customers.

In 1979, Davis and Bonfantini, as president of Chuck Wagon entered into the transaction which forms the basis of this lawsuit and appeal. According to the contract attached to the pleadings, Chuck Wagon agreed to sell and Davis agreed to buy 2,500 head of cross-bred cattle for $350,000.00. The undated contract required a down payment of $20,000.00 with the balance of $330,000.00 to be evidenced by a no interest promissory note due in full on February 1, 1980. The parties, Davis and Chuck Wagon, also entered into an agreement, dated July 1, 1979, for the purchase of feed in the amount of $330,000.00.

Davis originally sued Chuck Wagon and two individuals, Bonfantini and Irene D. Lynch, on a Chuck Wagon check, dated January 31, 1980, signed by those two defendants, payable to Davis for $280,000.00, drawn on an account which at the time of presentment was insufficient. The petition was subsequently twice amended to its trial posture, dropping along the way the original two individual defendants, and naming three others: Pascoe, Craven and Stadtler, the suit now being on "a contract for the purchase, feeding, and sale of 2,500 head of cattle", and for the balance of $280,000.00, as represented by the insufficient check, out of a total of $380,000.00 owed on the contract, which Chuck Wagon was to pay to Davis upon the sale of the 2,500 head of cattle. Attached to the trial petition were copies of the insufficient check, an undated contract of sale on 2,500 head of cattle at a total price of $350,-000.00, signed by Davis as purchaser and Chuck Wagon as seller, and two written guaranties signed by the individual Appellants guaranteeing the performances of Chuck Wagon of its obligations under a certain contract of sale dated July 1, 1979, and under a certain agreement for the purchase of feed dated July 1, 1979. In the alternative to the pleadings on the guaranties, the petition alleged that the three Appellants, along with Bonfantini, were the only stockholders of Chuck Wagon and, generally, that they and the corporation conducted their businesses in such ways so as to make the corporation the alter ego of the individual stockholders. The Appellants asserted defenses of limitations on both the guaranties and the alter ego theory, and illegal contracts, as well as general denials.

The petition alleged in paragraph II that "Plaintiffs and Defendants entered into a contract for the purchase, feeding, and sale of 2,500 head of cattle." In paragraph III, it alleged that the dishonored check in the sum of $280,000.00 "represented the final payment on $380,000.00, which Defendant CHUCK WAGON was to pay to Plaintiff upon the sale of the 2,500 head of cattle." And then in paragraph VI, Appellee alleged that the individual Appellants "agreed to

guarantee ... the performance by ... (Chuck Wagon) ... of its obligations under a Contract of Sale dated July 1, 1979, and an Agreement for purchase of feed dated July 1, 1979.... The check sued upon in the instant suit is an obligation arising under said Contract of Sale and Agreement for purchase of feed. A true and correct copy of the two Guaranty Agreements and Contract of Sale are attached as ... (exhibits to the petition) ... and incorporated by reference...."

Early in the trial, Davis offered a document (Plaintiff's Exhibit No. One) entitled "COLLATERAL NOTE: BILL OF SALE W/ SPECIAL BUY BACK CLAUSE." The Appellants objected to the admission of the document on various grounds, including lack of materiality and not being the contract of sale sued upon and attached to the petition. The objections were overruled. Appellants then moved to withdraw their announcements of ready which motions were also overruled. The "collateral note" was neither referred to nor attached to the trial petition. The jury found in answers to issues one and two that Chuck Wagon had breached the "Collateral Note Bill of Sale" and that it ("the corporation—not individually") owed $250,000.00 to Davis under that "contract", but in issues three and four, found that although Chuck Wagon had breached the contract of sale which had been attached to the petition, it owed nothing to Davis under that contract of sale. In answer to issue eight, the jury found that Pascoe, Craven and Stadtler "acted as the alter ego" [sic] of Chuck Wagon. With reference to the guaranties signed by the individual Appellants, the jury found in answers to issues ten, eleven and twelve that Stadtler did not receive any consideration for signing the guaranties, that Bonfantini knowingly made false representations as to material facts to induce Stadtler to sign the guaranties, and that prior to Stadtler signing the guaranties, Davis "knew of the actual circumstances surrounding ... the transaction ..." but failed to advise Stadtler of such circumstances.

■ It is elementary that where a plaintiff alleges a contract action in his petition, it is sufficient, in the absence of a special exception, if he alleges rights or obligations arising out of the contract and a legal conclusion that the defendant contracted to do or to refrain from doing a given act. See McDonald, Texas Civil Practice, sec. 6.14.4. A plaintiff should plead all of the material elements of the contract upon which he is relying for recovery. He need not plead immaterial elements. *Douglass v. McLure*, 254 S.W.2d 876 (Tex.Civ.App.—Amarillo 1952, writ dism'd). While in the absence of special exceptions, pleadings will be construed liberally in the pleader's favor, they must be sufficient to give fair and adequate notice to the adversary. *Stone v. Lawyers Title Insurance Corporation*, 554 S.W.2d 183 (Tex.1977).

A close but fair reading of Davis' First (actually this was his second) Amended Original Petition indicates that without resort to the allegations in paragraph VI relating to the guaranties signed by Appellants and the incorporation by reference of the contract of sale attached to the petition, it is impossible to tell the date of the contract and what the contracting parties were agreeing to do or refrain from doing. Assuming arguendo that the pleadings minus the allegations in paragraph VI and the contract of sale attached to the petition, were sufficient in the absence of a special exception to support, over Appellants' objections, the admission into evidence of the "Collateral Note Bill of Sale" and the submission of issues one and two, such allegations and the findings of the jury on those issues would have at best supported a judgment only against Chuck Wagon.

■ But here, Davis after pleading generally as to "a contract for the purchase, feeding, and sale of ... cattle" and the final payment of $280,000.00 which Chuck Wagon was to pay to Davis upon the sale of the cattle, pleads specifically in paragraph VI that Appellants signed the two agreements guaranteeing the performance by Chuck Wagon of its obligations under a contract of sale and an agreement for the purchase of feed, both dated July 1, 1979, that the dishonored check was an

obligation arising under the contract and agreement, and that "[a] true and correct copy [sic] of the two Guaranty Agreements and Contract of Sale are attached ... and incorporated by reference the same as if fully copied and set forth at length." If a party pleads generally and then goes further and pleads specifically on the same subject, the specific allegations control. The pleader cannot rely on the general but is confined to his specific allegations. *Monsanto Company v. Milam*, 494 S.W.2d 534, 536 (Tex.1973); *Fidelity & Casualty Company of New York v. Central Bank of Houston*, 672 S.W.2d 641, 646 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). When Davis offered, over Appellants' objections, the "collateral note bill of sale" which on its face had no connection with the allegations in paragraph VI, a variance was created. In order for a variance to be fatal it must be a substantial, misleading and prejudicial departure from the pleading. *Stone v. Lawyers Title Insurance Corporation*, 554 S.W.2d at 187. One suing upon a contract must recover upon the contract alleged, or not at all. *Morris v. Kasling*, 79 Tex. 141, 15 S.W. 226 (1890); *Giant Mfg. Co. v. Davis*, 132 Tex. 220, 121 S.W.2d 590, 592 (1938). The record in this case amply indicates that Appellants expressed being surprised, misled and prejudiced by the offering of the "Collateral Note Bill of Sale", and the fact that judgment was rendered on the jury's answers to issues one and two shows the prejudicial effect. The "Collateral Note Bill of Sale" was not the contract sued on. When the offering of the "Collateral Note" was objected to by the Appellants on the grounds of relevance and hearsay (as to the individual Appellants), the proper procedure would have been for Davis to request a trial amendment. Tex.R.Civ.P. 66. None was requested. Appellants timely moved for permission to withdraw their announcements of ready, but their requests were overruled. Appellants objected unsuccessfully to the submission of issues one and two. The errors in admitting the "Collateral Note" into evidence and in submitting issues to the jury on that document would alone require a reversal. Apart from that, the jury in answers to issues three and four, found that although Chuck Wagon had breached the contract of sale, Chuck Wagon owed nothing to Davis on that contract.

Since the contract inquired about in issues three and four is the same contract of sale pled in paragraph VI in connection with the guaranty agreements and attached to Davis' trial pleadings, it follows that if Chuck Wagon owed nothing, the individual Appellants also owed nothing by virtue of their guaranties. We sustain Stadtler's Points of Error Nos. Eight and Nine, Pascoe's and Chuck Wagon's Points of Error Nos. One and Two and Craven's Points of Error Nos. Two and Six.

We now turn to Appellants' points of error relating to issue eight on the alter ego theory of individual liability. We note initially that issue eight and its accompanying instruction incorrectly reversed the normal syntax of alter ego: "Do you find ... that any of the individual defendants *acted as the alter ego of the CHUCK WAGON* ... [emphasis added]?" No objection having been made to this unusual submission, we need not consider whether it was prejudicial error. Objections were made by each of the Appellants that the instruction given in connection with issue eight defining "alter ego" was incorrect as a matter of law and that there was no evidence or insufficient evidence to support the submission of the issue and the jury's answer thereto.

While we agree with the Appellants' assertion that the instruction is contrary to the law as stated in *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex.1986), and thus would require a reversal and remand, it is unnecessary to discuss this further in view of our disposition of the legal sufficiency points of error. When reviewing a legal insufficiency point of error, an appellate court must consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may be properly drawn therefrom, and disregarding all contrary or conflicting evidence and inferences. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987);

*Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If there is probative evidence more than a scintilla to support the finding, the no evidence challenge fails. See *Stafford*, 726 S.W.2d at 16. We have carefully reviewed the record and find no evidence of probative force to support the jury's affirmative answer to issue eight. Other than some vague statements in his brief that Appellants "enjoyed the use of Appellee's money and used the corporate check book and records to unduly delay his receipt of what was rightfully his ..." and Appellants shuffling "corporate funds around to make the corporation unable to meet its obligations ...", Davis points to no specific evidence in the record to support those assertions or the finding.

It is axiomatic that the more specific legal principle, statutory or case law, governs over the general. *Lower Nueces River Water Supply District v. Live Oak County*, 312 S.W.2d 696, 700 (Tex.Civ.App. —San Antonio 1958, writ ref'd n.r.e.). In this case, Davis pled broadly and generally as to the kinds of conduct on the part of Appellants leading to his alter ego conclusion. The jury was so instructed. While there is evidence that on two occasions in 1978, Bonfantini used corporate funds, which had come from money tendered by Davis to Chuck Wagon, once to satisfy personal bank demands against himself and Craven and another time, in a loan to Circle Three, a partnership business of Stadtler and Pascoe, the evidence is undisputed that both of these loans, which took place well before the date of the contract of sale made the basis of this lawsuit, were repaid in full with interest. Loans such as these were specifically addressed by former Article 2.41(A)(4), Texas Business Corporation Act of 1955, in effect at the time of the transactions:

> The directors of a corporation who vote for or assent to the making of a loan to an officer or director of the corporation, ... shall be jointly and severally liable to the corporation for the amount of such loan until the repayment thereof.

Although corporations were without power to lend money to officers or directors, Tex. Bus.Corp.Act Ann. art. 2.02 (Vernon 1980), the quoted section was a specific provision to protect the corporation in the event such a loan was made and stands in contrast to Davis' general theories of shareholder alter ego liability. Whatever potential harm may have been done by the ultra vires acts of making loans to officers was cured by the repayment of the loans. Moreover, the evidence indicates that the money from both of the repaid loans went to Davis to repay him in connection with a previous transaction.

Such loans fall far short of the criteria set out in *Aztec Management and Investment Co. Inc. v. McKenzie*, 709 S.W.2d 237 (Tex.App.—Corpus Christi 1986, no writ), cited in Davis' brief. Apart from such loans, the record contains no evidence of shareholders utilizing corporate funds to the detriment of the creditors of Chuck Wagon to satisfy personal debts or personally participating in a wrongful act by Chuck Wagon, as asserted by Davis. We thus conclude there is no evidence to support the submission of issue eight or the finding that Appellees were the alter ego of Chuck Wagon. *Torregrossa v. Szelc*, 603 S.W.2d 803 (Tex.1980). We sustain Stadtler's Points of Error Nos. Two and Four, Pascoe's Points of Error Nos. Eight and Nine and Craven's Point of Error No. Four.

■ Davis, in his two cross-points of error, complains that the instruction on the term "consideration" given in issue ten is erroneous as a matter of law and that there is either no evidence or insufficient evidence to support the submission of issues ten, eleven and twelve. When Davis' attorney made his objection to the proposed instruction defining "consideration", he suggested that a change be made. The court and Stadtler agreed and the change was made. No further objection was made. Davis brings forth new objections in his brief not made to the trial court. Failure to object to the instruction as given after being modified at Davis' request, waived the error, if any. *Crisp v. Southwest Bancshares Leasing Company*, 586 S.W.2d 610, 616 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); Tex.R.Civ.P. 272.

As to the legal and factual sufficiency points, here again Davis first raises these specific points in his brief. A legal sufficiency or no evidence point may only be raised when the proper predicate has been raised in the trial court, *Aero Energy, Inc. v. Circle C Drilling Company,* 699 S.W.2d 821, 822 (Tex.1985). In contrast to a challenge to a jury answer, a challenge to a jury submission may only be predicated upon a legal insufficiency of evidence standard, not a factual insufficiency assertion. *Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex.1965); *Texas Employer's Insurance Association v. Gomez,* 756 S.W.2d 80 (Tex.App.—El Paso 1988, no writ). In Davis' case, the legal point could only be raised by an objection to the submission of issues ten, eleven and twelve due to the legal insufficiency of the defensive evidence or by a motion to disregard the jury's answers to those issues, neither of which he did. Instead, he moved for judgment "in accordance with the jury verdict." In so doing, he waived any appellate evidentiary complaint as to the submission of these issues. *Litton Industrial Products, Inc. v. Gammage,* 668 S.W.2d 319, 322 (Tex.1984); *Stewart & Stevenson Services, Inc. v. Enserve, Incorporated,* 719 S.W.2d 337, 341 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Because of the jury's answers to issues ten, eleven and twelve, we conclude that judgment against Stadtler on the guaranty was erroneous for this additional reason. Both cross-points of error are overruled.

In view of the results we have reached, it is unnecessary for us to consider Appellants' other points of error relating to the illegality of the contract, statutes of limitations and refusal of the trial court to allow trial amendments pleading offset.

The judgment of the trial court is reversed and rendered that Appellee take nothing from the corporate and individual Appellants.