

## NUMBER 13-00-00104-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

EXXON CORPORATION, ET AL.,                                    Appellants,

v.

LAURIE T. MIESCH, ET AL.,                                    Appellees.

### On appeal from the 135th District Court
### of Refugio County, Texas.

## MEMORANDUM OPINION ON REMAND

**Before Chief Justice Valdez and Justices Vela and Wittig[1]
Memorandum Opinion on Remand by Justice Wittig**

We issued our original opinion March 1, 2012.  Subsequently, appellants filed a

motion for rehearing, and the Court requested and received a response thereto from

appellees.  We deny the motion for rehearing, but we withdraw our original opinion and

---

[1] Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (West 2005).

the judgment that was previously issued, and we substitute the following opinion and accompanying judgment in their place.

Cross-appellants Laurie T. Miesch, Molly Miesch Allen, Jack Miesch, Michael Miesch, Jamie Miesch Robertson, Morgan Frances Dunn O'Connor, Brien O'Connor Dunn, Kelly Patricia Dunn Schaar, Bridey Kathleen Dunn Greeson, individually and as trustee, T. Michael O'Connor and Nancy O'Connor, collectively, "the Miesch Intervenors," appeal the trial court's granting of an instructed verdict in favor of cross-appellees, Exxon Corporation and Exxon Texas, Inc., collectively "Exxon." We previously affirmed in part a jury verdict in favor of the Miesch intervenors on their claims of waste and breach of contract. *Exxon Corp. v. Miesch*, 180 S.W.3d 299, 311 (Tex. App.—Corpus Christi 2005), *rev'd sub. nom., Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194 (Tex. 2011). The supreme court reversed and rendered on those claims and remanded the intervenors' claims for fraud, negligence, negligence per se, negligent misrepresentation, tortious interference with economic opportunity, and breach of regulatory duty to plug wells properly. *Exxon Corp.* 348 S.W.3d at 221.[2]

These latter remanded claims were the subject of an instructed verdict by the trial court. The intervenors argue that the trial court improperly granted the instructed verdict. We affirm in part, and reverse and remand in part.

## I. BACKGROUND

The Miesch intervenors were long standing lessors of Exxon, going back to the 1950's. Exxon sought to re-negotiate the leases which required it to pay fifty percent

---

[2] Emerald has filed a "motion for remand" asking this Court to remand its fraud claim to the trial court so that it may be timely tried. By response, appellants assert that the "claim is already in the trial court." We agree with appellants that the claim is pending in the trial court, and accordingly, we dismiss as moot the motion to remand.

2

royalties. After negotiations broke down, Exxon determined to cap the wells and cease production. Exxon failed or refused to turn over all of the well and field data requested by intervenors, specifically including well logs. By letter dated August 16, 1991, Exxon notified the royalty owners that it had completed its plugging operations. In 1993, intervenors enterered into a new lease agreement with a predecessor of Emerald Oil & Gas Company, LLC. On June 8, 1994, Emerald sent intervenors a written status report explaining it encountered "junk," cut casing, packers, and other debris in its attempt to re-open the plugged wells. Emerald filed suit against Exxon in July 1996 and intervenors filed claims in August 1996, September 1996, and January 1997. In October 1999, intervenors amended their petitions against Exxon to add claims for breach of contract, negligence, negligence per se, and negligent misrepresentation. Further background facts and case history are well discussed in the two previous opinions cited above.

## II. STANDARD OF REVIEW

We review a trial court's directed verdict based upon non-evidentiary grounds *de novo*. *Graham v. Atlantic Richfield Co.*, 848 S. W. 2d 747, 750–52 (Tex. App.—Corpus Christi 1993, writ denied). A directed verdict is appropriate when: 1) a defect (specifically indicated) in the opponent's pleading makes it insufficient to support a judgment; 2) the truth of fact propositions which, under the substantive law, establish the right of the movant, or negate the right of his opponent to judgment; or 3) when the evidence is insufficient to raise an issue as to one or more fact propositions which must be established for the opponent to be entitled to judgment. *Rowland v. Corpus Christi*, 620 S.W.2d 930, 932–33 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.) (citing

*Elliott v. Elliott*, 597 S.W.2d 795 (Tex. Civ. App.—Corpus Christi 1980, no writ)). In reviewing a directed verdict based upon legal sufficiency of the evidence, the court must examine the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Quantel Bus. Sys. v. CustomControls*, 761 S. W. 2d 301, 303–04 (Tex.1988); *cf. City of Keller v. Wilson*, 168 S.W.3d 802, 816–17 (Tex. 2005) (proper legal-sufficiency review prevents reviewing courts from substituting their opinions on credibility for those of the jurors, but proper review also prevents jurors from substituting their opinions for undisputed truth; when evidence contrary to a verdict is conclusive, it cannot be disregarded.)

### III. INSTRUCTED VERDICT

### A. NEGLIGENCE

Exxon moved for an instructed verdict on all claims made by Emerald and the Miesches. On appeal, the Miesches argue in part that Exxon did not show that their claims for negligence, negligence per se, gross negligence, tortious interference, and violation of the statutory duty to properly plug the wells were time barred. They contend that the evidence raised a fact question "on when Intervenors knew or should have known about Exxon's wrongful destruction of the wells." There appears to be no dispute that the two-year statute of limitations applies to these essentially negligence, tortious interference, and regulatory claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West 2002). Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003); *Johnson & Higgins of Tex. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998). When a

4

cause of action accrues is normally a question of law. *Knott*, 128 S.W.3d at 221; *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990).

The Miesches argue that Exxon's conduct in damaging wellbores and mineral formations give rise to liability regardless of the mineral leases. Exxon argues that the Miesches knew about their injuries more than two years before filing suit. We agree. On June 8, 1994 Tom Taylor of Emerald wrote a letter to each of the intervenors outlining the significant difficulties encountered when attempting to re-enter wells abandoned by Exxon. Specifically, he stated the old casing was cut by Exxon and left in the hole in multiple wells. The letter continued explaining that Emerald encountered packers left in the holes by Exxon. Emerald could not drill past 1350 feet in one well. In another well, where Exxon cut the casing, it shifted and collapsed as Emerald attempted re-entry. In yet another well, a mill was stuck in casing left by Exxon and could not be recovered. Junk was encountered on the attempted re-entry to the M.E. O'Connor A-10 well.

The applicable legal standard states that the statute of limitations begins to run when a party has actual knowledge of a wrongful injury. *Knott*, 128 S.W.3d at 221. Once a claimant learns of a cognizable injury, the statute of limitations begins to run even if the claimant does not yet know "the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it." *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex. 2004) (internal citations omitted); *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex 1997) (holding that the statute of limitations on a claim for damage to real property ran as soon as property owner knew of the presence of a hazardous chemical on the property, not

5

when the residue exceeded regulatory contamination levels). After being put on notice of alleged harm or injury-causing actions, the claimant must exercise reasonable diligence to investigate the suspected harm and file suit within the limitations period. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (holding that "[r]oyalty owners cannot be oblivious" to potentially injurious activity taking place in the field); *KPMG Peat Marwick v. Harrison Cnty. Housing Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (noting that a plaintiff's known loss from a wrongful premature sale of assets should have caused the plaintiff to investigate the mismanagement of the assets as well as a different defendant's involvement in the mismanagement); *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) (holding that the statute of limitations runs from the time fraud could have been discovered).

In this case, more than two years elapsed between the time that Exxon's alleged tortious conduct damaged the O'Connor Field and the date that Emerald and the Miesches sued Exxon. Emerald and the royalty owners claimed that Exxon's plugging operations caused them injury. Emerald filed suit in June 1996, and the Miesches intervened in the lawsuit in August 1996, September 1996, and January 1997, to assert claims against Exxon. The statute of limitations began to run when the parties has actual knowledge of a wrongful injury. This occurred by June 8, 1994 when Tom Taylor of Emerald wrote the letter to each of the intervenors outlining the significant difficulties encountered. *Knott*, 128 S.W.3d at 221.

The supreme court reached this same conclusion relating to the limitations issue in this case concerning the Miesches' waste claims. *See Exxon Corp.*, 348 S.W.3d at 209.

6

## B. FRAUD

The Miesches appealed the trial court's instructed verdict on the fraud issue concerning the remaining reserves. The elements of fraud are: a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990) (citing *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977)); *see also Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). As appellee notes, the Miesches must have suffered an injury by actively and justifiably relying on that representation. *Exxon Corp.*, 348 S.W.3d at 217.[3]

George Hite testified that the representations made to the intervenors concerning reserves were false. Based upon the work of its consultant Joe Wylie, Exxon did not include at least two producing zones. Exxon variously represented that the reserves under lease were depleted, "there is nothing there," or they would last only a couple more years. It further represented it "could not continue to produce it" (the field). Exxon's statements were not made in response to a contractual demand by the intervenors. Rather, the representations were made during Exxon's endeavor to renegotiate a new contract. Exxon refused to give the Miesches certain information, claiming it was *not covered* by the contract and was proprietary. Exxon failed or refused to furnish data supporting its conclusions for some years and did not furnish interpretive data justifying its assertions. Hite also testified that Exxon knew of the undeveloped formations because it was contained in Exxon's well logs. Some evidence showed that

---

[3] Also see our discussion of justifiable reliance below at page 16 addressing appellee's cited authorities.

7

the Miesches relied upon the false representations because the intervenors agreed to diminish their new royalty rates and also initially agreed to forego bonuses from the new lessee Emerald. Exxon's intent that the Miesches act upon the misrepresentations may be inferred because it was itself seeking to renegotiate its leases in order to obtain more favorable terms, i.e. the lowering of royalties, which did occur as a result of the misrepresentations, albeit to the benefit of Emerald. Furthermore, intent is usually a fact question. *Dixon v. Sw. Bell Tel. Co.*, 607 S.W.2d 240, 242 (Tex. 1980); *IMCO Oil & Gas v. Mitchell Energy Corp.*, 911 S.W.2d 916, 920 (Tex. App.—Fort Worth 1995, no writ).

Exxon argues the trial court properly granted an instructed verdict on the Miesches' fraud claims. We disagree. First, we note the statute of limitations for fraud is four years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002). The supreme court has stated: "Generally, in a case of fraud the statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence." *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997) citing *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (Tex. 1944). Applying the four year statute in its *Emerald* decision, the supreme court noted there was no fact finding indicating the dates it may have known of Exxon's alleged misrepresentation concerning false plugging reports "or that Exxon allegedly misrepresented the reserves to the royalty owners." *Exxon Corp.,* 348 S.W.3d at 216. Emerald may have learned of certain misrepresentations by the June 8, 1994 Tom Taylor letter, but then the Emerald fraud claims would be timely. *Id. Nor is there* a fact finding or indisputable evidence that shows when the Miesches could have determined

8

that the misrepresentations were false before February, 1999. In 1999, during discovery, the Miesches finally obtained information showing two undeveloped zones under the terminated leases, information suppressed and misrepresented by Exxon. We hold that there was evidence intervenors' fraud claims were timely.

Exxon argues that as a matter of law, intervenors may not recover for fraud because their complaint sounds only in contract, not tort. It points to the trial court's observation: "I just think that there is no fraud action here. It's a question of breach of contract." Exxon attacks intervenors' reliance upon *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs.*, 960 S.W.2d 41, 45 (Tex. 1998). It argues that *Formosa Plastics* does not hold that a "con-tort" analysis applies to all fraud cases. We agree.

Over the last sixty years, courts have analyzed the distinction between torts and contracts from two different perspectives. At first, the supreme court analyzed the source of the duty in determining whether an action sounded in tort or contract. *Id.* at 45 (citing *Int'l Printing Pressmen & Assistants' Union v. Smith*, 198 S.W.2d 729, 735 (Tex. 1946) (holding that an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law.) The high court noted further guidelines for distinguishing contract and tort causes of action:

> If the defendant's conduct—such as negligently burning down a house— would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*Id.* (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). "In determining whether the plaintiff may recover on a tort theory, it is also instructive to

9

examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.* (citing *DeLanney*, 809 S.W.2d at 494).

Following these guidelines, we first determine whether Exxon's duty to make the allegedly false statements arose solely from the contract. Under the lease contract, Exxon was obliged to furnish full information covering its operations through a representative designated in writing. From the record it appears that the actionable fraudulent representations were not in response to its contractual obligations. Rather, the evidence suggests Exxon sought to renegotiate its onerous fifty percent royalty obligation. In other words, Exxon sought to void the old contractual obligations and insisted upon new, more favorable terms going forward with new lease provisions. While seeking to significantly reduce the Miesches' royalties, Exxon misrepresented that information it possessed was proprietary, (not covered by the contract), that the field was depleted, uneconomical, that it could no longer develop the field and concealed reserve information to the contrary. By inference, the old contract was insupportable and a new contract was necessary. These actions were not in furtherance of the existing contract, but rather to induce, on false grounds, a new contract.

While a duty may be imposed by contract, the common law also addresses a duty to use reasonable care whenever it provides information to its customers or potential customers. *See Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex. 1991). The common law makes actionable a false material misrepresentation, which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, was relied upon, and caused injury.

10

*DeSantis*, 793 S.W.2d at 688. We additionally observe that the Miesches' contract claims were addressed to Exxon's duty to "fully develop" the leases. In that connection, the supreme court found no breach of contract as a matter of law

Exxon also argues its statements were opinion, not fact, citing *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995) (holding an actionable representation is one concerning a material fact; a pure expression of opinion will not support an action for fraud). In *Faircloth*, the material fact at issue was the potential value of a death case in the context of settlement negotiations. *Id.* We note that the potential settlement value of a death claim would necessarily be pure opinion. *Faircloth* in turn cites and relies upon *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). There, the supreme court delineated several exceptions to the opinion rule. First, an opinion may constitute fraud if the speaker has knowledge of its falsity. *Id.* (citing *Tex. Ind. Trust, Inc. v. Lusk*, 312 S.W.2d 324, 327 (Tex. Civ. App.—San Antonio 1958, writ ref'd); *T. M. Brooks v. Parr*, 507 S.W.2d 818, 820 (Tex. Civ. App.—Amarillo 1974, no writ)). Second, an expression of opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future. *Id.* (citing *Russell v. Ind. Transp. Co.*, 251 S.W. 1034, 1037 (Tex. Comm. App. 1923, holding app'd), *aff'd on rehearing*, 258 S.W. 462 (1924); *Ratcliff v. Trenholm*, 596 S.W.2d 645, 651 (Tex. Civ. App.—Tyler 1980, writ ref'd n.r.e.); *Wright v. Carpenter*, 579 S.W.2d 575, 580 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.). And third, when an opinion is based on past or present facts, an action for fraud may be maintained. *Id.* (citing *Buchanan v. Burnett*, 119 S.W. 1141, 1142 (Tex. 1909); *Mut. Life & Loan Ass'n v. Jackson*, 76 S.W.2d 547, 548 (Tex. Civ. App.—Texarkana 1934, writ

11

dism'd); *Burcum v. Gaston*, 196 S.W.2d 257, 259 (Tex. Civ. App.—Amarillo 1917, no writ)).

Here, Exxon had special knowledge of facts that would occur. The representations were made based on past or then present facts. And evidence pointed to the fact that Exxon had knowledge of the falsity of its representations. Specifically, well logs and interpretative data initially denied to the Miesches indicated materially more reserves than represented and ignored undeveloped fields. Why would Exxon wish to continue operations, albeit at reduced royalties, absent profitable reserves? Therefore, even assuming Exxon's representations might have partly or in whole constituted opinions, we find the exceptions to the opinion rule applicable. The jury could have found Exxon spoke with recklessness and possessed special knowledge. *See Trenholm* 646 S.W.2d at 930. In addition, the Exxon representations do not appear to be "pure" expressions of opinion. *See Faircloth*, 898 S.W.2d at 688.

Exxon cites *Facciolla v. Linbeck Constr. Corp.*, 968 S.W.2d 435, 448 (Tex. App.—Texarkana 1998, no pet.). However, in *Facciolla* the same factual allegations and subject matter of the fraud claim were the basis of Facciolla's breach of contract claim. *Id.* Further, the damages in *Facciolla*, except for deceptive trade practices and insurance code violations, arose solely from injury to the subject of the contract. *Id.* The Miesches' proof of damages is separate and distinct. Exxon also cites *Kajima Int'l v. Formosa Plastics Corp.*, 15 S.W.3d 289, 293 (Tex. App.—Corpus Christi 2000, no pet.) (holding that a promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act) (citing *Spoljaric,* 708 S.W.2d at 434). *Kajima* also rejected the argument Exxon

12

makes here that the only type of fraud claim which can exist in a contract setting is a claim for fraud in the inducement of contracts. *Id.*

Finally, Exxon cites *Union Pac. Res. Group v. Rhone-Poulenc, Inc.*, 45 F. Supp. 2d 544, 552–53 (N.D. Tex. 1999). There, the plaintiff was actually furnished a copy of the proposed stock purchase agreement which delineated the purchase price adjustment calculations. *Id.* The plaintiffs knew what they did not know, i.e. they knew how the price adjustments would be calculated, yet claimed they didn't have the specific figures to make the calculation. *Id.* "This knowledge belies claims of fraud and negligent misrepresentation." *Id.* The plaintiffs had a "duty to do more than just make an "elliptical 'invitation' to respond" to a concern about dollar figures; they had to demand the information they needed." *Id.* Unlike the cited case, Exxon affirmatively misrepresented and concealed the facts it knew concerning the physical properties of the field in order to induce the Miesches to form a new contract or to deter the Miesches from seeking other developers of the field. Exxon also refused and delayed the Miesches' demand for the information they needed. Nor does Exxon point to any evidence in the record that the non-operator royalty owner had public or other sources of information about remaining reserves and to the contrary Exxon claimed its own concealed written information concerning the reserves was confidential and proprietary.

## C. NEGLIGENT MISREPRESENTATION

The intervenors contend Exxon failed to show that the evidence conclusively proves that they knew or should have known of the alleged negligent representations more than two years prior to suit. We agree. First, this claim does not pertain to the negligence claims discussed above concerning Exxon's alleged damage to the wells.

13

As we indicated, the Taylor letter in 1994 put the Miesches on notice of the junk and other debris found in the plugged wells. The negligent representation claim centers upon the factual scenario asserted in the fraud claims. Exxon represented that the field had already had its days and could not continue. In correspondence, Exxon stated there was limited remaining potential in the field, and stated that the field was depleted. The Taylor letter does not address these misrepresentations.

Exxon contends that the discovery rule and doctrine of fraudulent concealment focus on the discovery of the first actionable injury, citing *KPMG Peat*, 988 S.W.2d at 749–50. We agree. Exxon plugged the wells and filed its last W-3 forms in 1991, but again, this pertains to the damaged well bores and does not address the misrepresented reserves. Exxon again argues from the Taylor letter, but the letter is not material to this claim. While Exxon insists the Miesches knew or should have known of the existence of the negligent misrepresentation claim more than two years before they intervened, this is a contested factually based argument that should be presented to the jury. *See* TEX. R. CIV. P. 278. Witnesses for Exxon admitted the Miesches could not accurately assess the reserves without the concealed documents.

Statutes of limitations are intended to compel plaintiffs to assert their claims while the evidence is fresh in the minds of the parties and witness. *Wagner & Brown v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should have known of the facts giving rise to the claim. *Id.* Inquiries involving the discovery rule usually entail questions for the trier of fact. *Child v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). An injury is inherently undiscoverable if it is, by its nature,

14

unlikely to be discovered within the prescribed limitations period despite due diligence. *Horwood*, 58 S.W.3d at 734–35.   Evidence showed that Exxon actively misrepresented there were no significant reserves, explicitly or impliedly denied the existence of their records showing otherwise by concealment, and furthermore, Exxon denied the Miesches access to records necessary to ascertain the extent of underground reserves within the statutory two year limitations period.   Unlike *Kerlin*, and other recent cases, multiple sources of information were not available to the royalty owners about reserves of their mineral resources, such as leases, Railroad Commission records, or visible operations on adjoining property.   *Cf. Kerlin v. Sauceda*, 263 S.W.3d 920, 925-926 (Tex. 2008).

Fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997).   The Miesches applied reasonable diligence but were denied well logs and information actively concealed by Exxon.

Next, Exxon argues the damages available under this claim.   In *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998), cited by Exxon, the supreme court discusses the damage model and limitation on benefit of the bargain claims under negligent misrepresentation.   *See id.*   In *D.S.A.*, the damages the jury awarded for negligent misrepresentation were identical to the damages it awarded for breach of contract, and HISD did not offer proof of any economic injury independent of contract damages.   *Id.*   Without deciding whether HISD breached a legal duty independent of its contractual duties, the high court concluded that HISD's negligent misrepresentation claim must fail for lack of any independent injury.   *Id.*   "The *Formosa*

15

opinion's rejection of the independent injury requirement in fraudulent inducement claims does not extend to claims for negligent misrepresentation or negligent inducement." *Id.* Unlike fraudulent inducement, the benefit of the bargain measure of damages is not available for a claim of negligent misrepresentation. *Id.* The court reiterated its adoption of the independent injury requirement of section 552B of the Restatement (Second) of Torts, which provides:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including:
>
> a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*Id.* (citing Restatement (Second) of Torts § 552B (1977)).

The Miesches presented evidence that they incurred out-of-pocket losses in addition to, and independent of any purely contractual damages. Thus, they established an injury distinct from and not dependent upon any contractually related claims. On this record, we cannot conclude that the Miesches' claims for damages for negligent misrepresentations were limited to claims for damages for the benefit of their bargain on their contract with Exxon. We conclude the economic loss rule would not bar intervenors' recovery of damages under this claim.

Finally, Exxon poses that the evidence conclusively shows that the intervenors did not justifiably rely on its representations about the productivity and reserves of the

oil field. It insists both fraud and negligent misrepresentation require proof of reliance, citing *Bartlett v. Schmidt*, 33 S.W.3d 35, 37–38 (Tex. App.—Corpus Christi 2000, pet. denied) (citing *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (negligent misrepresentation); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990) (fraud)). We agree in principle. However, *Bartlett* presented a situation where the person to whom the misrepresentations are made, before closing the contract, inspected and examined the subject of the contract, or conducted an independent investigation into the matters covered by the representations, which was sufficient to inform him of the truth, and which is not interfered with or rendered nugatory by any act of any other party. *Id.* at 38. There "it is presumed that he places his reliance on the information acquired by such investigation and on his own judgment based on such facts, and not on the representations made to him, and therefore he cannot have relief because his bargain proves unsatisfactory to him." *Id.* Exxon prevented such an examination in its negotiations with the Miesches.

We turn to Exxon's next case: *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 615 (5th Cir. Tex. 1996). The facts are materially different.

> Given that prior to making the subsequent stock purchases, SHT (1) was an extremely sophisticated multi-national conglomerate; (2) had virtually complete access to the internal financial records of Rangaire; and (3) suspected, and was later warned by its advisor, that a problem existed regarding the book value of fixed assets which it now complains that Peat Marwick failed to detect or disclose, we find it simply incredible that SHT could have been justified in relying on the audit reports in question, if in fact it relied on them at all. And even when we view the evidence in the light most favorable to the verdict, we must conclude that no reasonable jury could arrive at a verdict to the contrary. We therefore hold as a matter of law that if SHT did indeed rely on Peat Marwick's audit reports with respect to its stock purchases following the initial acquisition, such reliance was simply unjustified.

17

*Id.* (internal citations omitted). During the relevant time frame, Exxon claimed its records were proprietary and denied access to the Miesches. Years later, Exxon furnished piecemeal incomplete information to the Miesches and finally, in February 1999, provided data showing the disparity between its representations and the actual reserves of the field.

Morgan Dunn O'Connor testified the intervenors had no reason not to rely upon the representations. T. Michael O'Connor and others testified concerning their justifiable reliance upon the Exxon representations. He went so far as to inform Emerald's predecessor that Exxon told them that the field was depleted and that there was nothing there. As a result, initial bonuses were given up and royalties reduced. We find that there was evidence of active, justifiable reliance and accordingly sustain this issue.

## IV. CONCLUSION

We affirm the trial court's instructed verdict on the intervenors' claims for negligence, negligence per se, tortious interference with economic opportunity, and breach of regulatory duty to plug wells properly. We reverse and remand the instructed verdict on intervenors' fraud and negligent misrepresentation claims.


Don Wittig
Justice


Delivered and filed the
11th day of October, 2012.

18